IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SANDRA HOPKINS, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 22-cv-2464-DWD |
| DELL TECHNOLOGIES, INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Sandra Hopkins, individually and on behalf of all others similarly situated, brings this putative class action against Defendant Dell Technologies, Inc. alleging consumer fraud violations, breach of warranty, and related claims concerning Defendant's Inspiron 15 300 Series laptop computers with lithium-ion batteries.[1]  Now before the Court is Defendant's Motion to Compel Arbitration (Doc. 20).  Plaintiff filed a Memorandum in Opposition (Doc. 25), to which Defendant replied (Doc. 26).  Having considered the briefing and arguments of the parties, the Motion will be granted.

## Background

As alleged in the Complaint, Defendant manufacturers, markets, and sells the Inspiron 15 3000 Series of laptop computers under its Dell brand with lithium-ion

---

[1] Plaintiff is a citizen of Illinois (Doc. 1, ¶ 35). Defendant is a Delaware corporation with a principal place of business in Texas (Doc. 1, ¶ 53), and thus a citizen of Delaware and Texas.  Accordingly, for the purposes of determining CAFA jurisdiction, the parties are minimally diverse.  *See* 28 U.S.C. § 1332(d)(2).

batteries (the "Product") (Doc. 1, ¶ 1).  In or around March 2020, Plaintiff purchased the Product from a third-party retailer, Best Buy (Doc. 1, ¶ 37).  Plaintiff alleges that she purchased the Product expecting that the laptop battery "would be adequately manufactured, designed and tested so that it could reliably hold its charge and not drain rapidly after short periods unconnected to an external power source."  (Doc. 1, ¶ 38).  However, Plaintiff contends that the battery she purchased "suffered premature failure and degradation after only several months of normal usage" preventing and limiting her ability to use the laptop as originally represented by Defendant (Doc. 1, ¶¶ 24, 42).

Plaintiff's complaint alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, *et seq.*, and related state consumer fraud acts, breaches of express warranty, implied warranty, and the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, negligence misrepresentation, fraud, and unjust enrichment (Doc. 1).  Plaintiff also seeks to certify an Illinois Class and Multi-State Class consisting of persons in the States of North Dakota, North Carolina, Kentucky, Utah, Kansas, and Wyoming pursuant to Fed. R. Civ. P. 23 (Doc. 1, ¶ 46).

<u>Discussion</u>

Defendant moves to compel arbitration under the Federal Arbitration Act ("FAA") pursuant to an arbitration clause contained in its Terms of Sale for the Product (Doc. 20).  Defendant maintains that Plaintiff was required to agree to these Terms of Sale when she purchased the Product in March 2020 from the third-party seller, Best Buy (Doc. 20-1, ¶ 8).   The Terms of Sale at the time of Plaintiff's purchase of the Product in 2020 provided, in relevant part:

2

**PLEASE READ THESE TERMS CAREFULLY! THEY INCLUDE AN ARBITRATION PROVISION REQUIRING INDIVIDUAL ARBITRATION OF DISPUTES INSTEAD OF JURY TRIALS OR CLASS ACTIONS. By submitting your order or accepting or using products, you acknowledge that you agree to these terms in their entirety.**

1. **Application.** These Consumer Terms of Sale ("Terms") apply to all consumer purchases from Dell or of Dell products, software, services or support ("Product") in the United States.

2. **Additional Terms.** The Terms consist of this document and Dell's:
a. U.S. Return Policy,
b. Consumer Warranties (for Dell-branded hardware purchases),
c. License Agreements (for software purchases),
d. Consumer Service Contracts (for services purchases),
e. Privacy Statement (describing how Dell collects, uses and shares your personal information), and
f. Terms of Use (governing your use of Dell's website).

. . .

12. **Governing Law.** THESE TERMS AND ANY DISPUTE BETWEEN YOU AND DELL WILL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO CONFLICTS OF LAW.

13. **Dispute Resolution and Binding Arbitration. YOU AND DELL AGREE TO RESOLVE ANY DISPUTES BETWEEN US EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ON AN INDIVIDUAL BASIS, WHICH MEANS YOU AND DELL WAIVE ANY RIGHT TO LITIGATE DISPUTES IN A COURT OR BEFORE A JURY, OR AS PART OF A CLASS ACTION, A REPRESENTATIVE ACTION, A CONSOLIDATED ACTION OR IN A PRIVATE ATTORNEY GENERAL CAPACITY.**

a. This arbitration requirement applies to any claim or dispute of any kind (whether in contract, tort, or otherwise, whether pre-existing, present, or future, and including statutory, common law, or equitable) between you and Dell, its agents, employees, successors, assigns, direct and indirect subsidiaries, and any third party providing any products or services to you in connection with your purchase ("Dell") that relates in any way to your purchase or Product, these Terms, or Dell's marketing or advertising ("Claims").

3

b. You still have the right to bring individual Claims in small claims court, to the extent that you qualify.

c. Dell will pay the arbitration/arbitrator fees.

d. Arbitration shall be administered by either:
i. The American Arbitration Association (AAA), subject to its Consumer Arbitration Rules, available at (800) 778-7879 and www.adr.org; or
ii. JAMS, subject to the JAMS Comprehensive Arbitration Rules, available at (800) 352-5267 and www.jamsadr.com.

e. The arbitrator shall have exclusive authority to resolve any arbitrability issues including any dispute over these Terms or this arbitration provision's scope, application, meaning, and enforceability. The arbitrator shall be empowered to grant whatever relief would be available in court. Any award of the arbitrator(s) shall be final and binding and may be entered as a judgment in any court of competent jurisdiction.

f. You and Dell agree to arbitration only on an individual basis. Neither you nor Dell may join or consolidate claims of others or participate in any claim as a class representative or a class member. If any portion of this arbitration agreement is found unenforceable, the unenforceable portion shall be severed and the remaining arbitration terms shall be enforced (but in no event will there be a class arbitration). This Paragraph controls over any inconsistent term in any other agreement.

g. This transaction shall be governed by the Federal Arbitration Act 9 U.S.C. § 1-16 (FAA).

(rev. 8.16.19)

(Doc. 20-6)[2].

In support of its Motion, Defendant submitted an affidavit of Elizabeth Tetmeyer who attested to Defendant's business records and practices (Doc. 20-1). Ms. Tetmeyer stated that it was Defendant's regular business practices at the time Plaintiff purchased

---

[2] The Terms of Sale are also available at https://www.dell.com/learn/us/en/uscorp1/terms-of-sale-consumer-terms-of-sale (last visited May 30, 2023).

the Product to have consumers, like Plaintiff, agree to Defendant's Terms of Sale at the time of purchase and prior to using Defendant's Product (Doc. 20-1, ¶ 8).  Ms. Tetmeyer specified that all Inspiron laptops shipped to Best Buy for sale included a label on the outside of the Product's box that directed customers to Defendant's Terms of Sale (Doc. 20-1, ¶ 9).  The outside label stated:

> NOTE: THIS PURCHASE AND YOUR USE OF THIS PRODUCT ARE SUBJECT TO DELL'S TERMS OF SALE, WHICH YOU CAN FIND AT DELL.COM/TERMS (US) . . . . THESE TERMS REQUIRE THE USE OF ARBITRATION TO RESOLVE DISPUTES ON AN INDIVIDUAL BASIS, AND, WHERE APPLICABLE, SPECIFY ARBITRATION INSTEAD OF JURY TRIALS OR CLASS ACTIONS.

(Doc. 20-1, ¶ 9; Doc. 20-3).

Further, once a consumer purchased the Product, upon opening the Product's box, consumers were presented with a "Warranty, Safety, and Regulatory Information" pamphlet, which provided, in relevant part:

> **Important Notice**
>
> Your purchase and use of this product is subject to and governed by Dell's applicable Terms of Sale which will be presented to you at setup and which are available online.
>
> If you are a consumer customer, your purchase is governed by the U.S. Consumer Terms of Sale at www.dell.com/consumerterms.
>
> Para obtener una versión en español de las condiciones de venta, visite http://content.dell.com/us/en/home/d/solutions/consumertermsof-sale-es.aspx.
>
> If you are in Canada, the agreement that governs your purchase can be located at www.dell.ca/terms.
>
> Unless you have a separate written agreement with Dell that specifically applies to your order, if you are a commercial customer and you

purchased this product directly from Dell for your internal use, your purchase is governed by the Commercial Terms of Sale: www.dell.com/CTS.

YOUR AGREEMENT WITH DELL CONTAINS VERY IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND OBLIGATIONS, AS WELL AS LIMITATIONS AND EXCLUSIONS. THE AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, and where applicable, specifies arbitration INSTEAD OF JURY TRIALS OR CLASS ACTIONS. PLEASE REVIEW THE TERMS CAREFULLY.

For the avoidance of doubt, to the extent that Dell is deemed under applicable law to have accepted an offer by you: (a) Dell hereby objects to and rejects all additional or inconsistent terms that may be contained in any purchase order or other documentation submitted by you in connection with your order; and (b) Dell hereby conditions its acceptance on your assent that the foregoing terms and conditions shall exclusively control.

IF YOU DO NOT AGREE WITH THESE TERMS, DO NOT USE YOUR PRODUCT AND RETURN IT TO DELL IN ACCORDANCE WITH DELL'S RETURN POLICY LOCATED AT www.dell.com/returnpolicy (United States) and www.dell.ca/terms (Canada-English) and www.dell.ca/conditions (Canada-French).

(Doc. 20-1, ¶ 10; Doc. 20-4).

Finally, once a consumer "booted up their Inspiron laptops for the first time, a pre-loaded screen popped up" stating "Congratulations on your new Dell purchase! Your purchase and use of this product is subject to and governed by Dell's applicable Terms of Sale and End User License Agreement, which are each presented below in the following order:" (Doc. 21-1, ¶ 11; Doc. 20-5).  Defendant's Terms of Sale were then available for the purchaser to scroll through on the same screen, just below this notice (Doc. 21-1, ¶ 11).  Then, to begin using the Inspiron computer, the purchaser was required to click an "Accept" button located immediately below this notice on the bottom right-

6

hand side of the screen, affirmatively indicating that the purchaser agreed to Dell's Terms of Sale (Doc. 21-1, ¶ 11).  According to Ms. Tetmeyer, if the purchaser did not click the "Accept" button during the start-up process, the Product would not boot up.  (Doc. 21-1, ¶ 11).

The FAA mandates that courts enforce valid, written arbitration agreements. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 2). This mandate reflects a federal policy that favors arbitration and "places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  Arbitration should be compelled under the FAA when "three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (citing 9 U.S.C. §§ 3–4).

Courts are responsible for deciding whether an agreement to arbitrate exists before ordering arbitration. *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 741–42 (7th Cir. 2010); *in accord K.F.C. v. Snap Inc.*, 29 F.4th at 837.  In doing so, the Court turns to state contract law to determine whether a binding arbitration agreement exists.  *Janiga*, 615 F.3d at 742; *Tinder*, 305 F.3d at 733 (citing 9 U.S.C. § 2); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  Here, the parties suggest that either Illinois or Texas law applies, and that courts in both states would review the questions presented here the same way (Doc. 20, p. 9).[3]  Indeed, under both Illinois and Texas law, courts look to whether the

---

[3] *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflicts of laws unless the parties disagree on which state's law applies").

contracting parties manifested an objective intent to be bound to the agreement through outward expressions, such as words or acts. *See Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) ("[I]ntent to manifest assent in Illinois is revealed by 'outward expressions such as words and acts.'") (citing *Bank Computer Network Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 110 Ill. App. 3d 492 (1982)); *In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2012) ("The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind.") (citing *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App. 1999)).

Further, both Illinois and Texas law recognize the validity and enforceability of so called "clickwrap agreements", those online agreements accepted by clicking a button to manifest acceptance. *See, Sgouros*, 817 F.3d at 1034 (finding "nothing automatically offensive" about clickwrap agreements "as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement."). *Recursion Software, Inc. v. Interactive Intel., Inc.*, 425 F. Supp. 2d 756, 783 (N.D. Tex. 2006) (clickwrap agreements, which allow consumers to assent to the terms of a contract by selecting an "accept button" on the website "are valid and enforceable contracts" under Texas law).

Similarly, Illinois and Texas law also recognize the validity of contracts where the customer is informed of the general existence of applicable terms of use, but the full terms were accessible via a separate hyperlink or webpage. *See, Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959, 966–67 (N.D. Ill. 2020) (enforcing an arbitration agreement where the

plaintiff-consumer continued to use an application after receiving a statement informing them that continued use constituted agreement to the terms and conditions, and the terms and conditions were available via hyperlinks); *In re Online Travel Co.*, 953 F. Supp. 2d 713, 718 (N.D. Tex. 2013) (enforcing an arbitration agreement contained in an user agreement where plaintiff clicked a button above a notice explaining that, by clicking the button, the user agreed to the policies set forth in the user agreement, and the agreement was accessible via hyperlink); *see also Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976 (2005) (applying Texas law and finding that customer agreed to terms of sale, and its included arbitration clause, when completing the transaction, in part, because all pages required to complete the purchase contained a visible hyperlink labeled "Terms and Conditions of Sale" and the online forms stated, "All sales are subject to contract.").

Here, the parties dispute whether Plaintiff agreed to the arbitration agreement in Defendant's Terms of Sale. Defendant argues that Plaintiff manifested assent to its Terms of Sale by her use and continued use of the Product after being informed of the terms on (1) the Product's exterior packaging, (2) the warranty pamphlet contained in the Product's interior packaging, and (3) on the Product's start-up screen before use. Plaintiff does not disagree with the general enforceability of clickwrap agreements. Instead, she presents two thread-bare challenges to her assent, questioning the conspicuousness of Defendant's Terms of Sale as presented on the Product's exterior box and the Product's start-up screen (Doc. 25). Plaintiff does not, however, address Defendant's arguments concerning the warranty pamphlet contained in the Product's interior packaging.

As for the exterior box, Plaintiff suggests that there is a lack of evidence for her assent because Defendant did not provide a representative picture of the exterior label affixed to the Product's box so the Court could evaluate whether Plaintiff could have viewed the label when opening the box (Doc. 25, pp. 2-3).  Plaintiff contends that this omission precludes a finding that Plaintiff knew or agreed to the Terms of Sale.  Similarly, Plaintiff argues that Defendant failed to establish Plaintiff's assent to the Terms of Sale via the Product's start-up screen because customers were able to click the "Accept" button without scrolling through all the terms of the Terms of Sale, and the start-up screen also referenced a separate licensing agreement with "Microsoft Software" (*See* Doc. 21-1, ¶ 11; Doc. 25, p. 4).

However, apart from unauthenticated photographs, Plaintiff provided no evidence in support her allegations.  While the FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet, courts in this Circuit analogize the standard to that required of a party opposing summary judgment under Fed. R. Civ. P. 56(e), *i.e.,* the party opposing arbitration "must demonstrate that a genuine issue of material fact warranting a trial exists." *Tinder*, 305 F.3d at 735.  Thus, "[j]ust as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.*; *see also Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 445 (N.D. Tex. 2019) (citing to *Tinder*, 305 F.3d at 735).

Here, Plaintiff has not submitted any evidence demonstrating a material factual dispute concerning her assent to Defendant's Terms of Sale. Indeed, while Plaintiff questions whether she viewed the Terms of Sale as presented on the Product's exterior box and start-up screen, she never denies viewing them.  Likewise, Plaintiff does not contest her purchase or continued use of the Product.  Nor does Plaintiff contest her receipt of the "Warranty, Safety, and Regulatory Information" pamphlet, which expressly referenced Defendant's arbitration provision and contained separate links to Defendant's Terms of Sale (Doc. 20-4).  As mentioned above, Illinois and Texas law both recognize the validity of contracts where the customer is informed of the existence of applicable terms of use, and the full terms of use are accessible via a separate hyperlink.  *See, e.g.*, *Acaley*, 464 F. Supp. 3d at 966–67; *In re Online Travel Co.*, 953 F. Supp. 2d at 718; *Hubbert*, 359 Ill. App. 3d 976.  Similar to those cases, here, Plaintiff also received reasonable notice that her use of the laptop constituted assent to Defendant's Terms of Sale through Plaintiff's uncontested receipt of the information pamphlet which contained links directly to Defendant's Terms of Sale, and by her clicking the "accept" button on the Product's start-up screen.

Accordingly, Plaintiff has failed to raise a genuine issue of material fact as to the contract formation issue here, and the Court **FINDS** that Plaintiff agreed to be bound to the terms of Defendant's Terms of Sale and its arbitration agreement. Having found that an agreement to arbitration exists, the FAA next instructs the court to stay proceedings on issues subject to arbitration and compel arbitration pursuant to the agreement. 9 U.S.C. § 3-4.  Parties are, however, permitted to delegate this gateway question to the

11

arbitrator. *See K.F.C. by & though Clark v. Snap, Inc.*, No. 3:21-CV-9-DWD, 2021 WL 2376359, at *3 (S.D. Ill. June 10, 2021), *aff'd sub nom. K.F.C. v. Snap Inc.*, 29 F.4th 835 (7th Cir. 2022). Here, Defendant argues that any arbitrability issues have been delegated to the arbitrator because of the following delegation clause in the Terms of Sale:

> The arbitrator shall have exclusive authority to resolve any arbitrability issues including any dispute over these Terms or this arbitration provision's scope, application, meaning, and enforceability. The arbitrator shall be empowered to grant whatever relief would be available in court. Any award of the arbitrator(s) shall be final and binding and may be entered as a judgment in any court of competent jurisdiction.

(Doc. 20-6, p. 3, ¶ 13(e)). The Terms of Sale also incorporate the American Arbitration Association's Consumer Arbitration Rules and the JAMS Comprehensive Arbitration Rules (Doc. 20-6, p. 3, ¶ 13(d)).

District courts routinely hold that the incorporation of specific arbitral rules, such as the AAA Rules or JAMS Rules, into arbitration provisions demonstrate an intent to submit gateway issues to arbitration. *See Clark v. Snap, Inc.*, No. 3:21-CV-9-DWD, 2021 WL 2376359 (S.D. Ill. June 10, 2021) (citing *Ed's Pallet Servs., Inc. v. Applied Underwriters, Inc.*, No. 15-CV-1163-SMY-SCW, 2017 WL 9287091 (S.D. Ill. Apr. 7, 2017) (collecting cases); *see also Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 458 (N.D. Ill. 2021) (Arbitration clauses which incorporate the JAMS rules, or other similarly worded arbitral rules, provide "'clear and unmistakable' evidence that the parties agreed to arbitrate "'arbitrability'"); *Phillips v. Neutron Holdings, Inc.*, No. 3:18-CV-3382-S, 2019 WL 4861435, at *5–*6 (N.D. Tex. Oct. 2, 2019) ("[G]enerally, stipulating that arbitration rules will govern the arbitration of disputes constitutes such 'clear and

unmistakable' evidence" of intent to transfer question of arbitrability to the arbitrator) (citing *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 674–75 (5th Cir. 2012)).   Thus, the express delegation provision and incorporation of the AAA and JAMS Rules here provide clear and unmistakable evidence of the parties' intent to delegate the threshold issues of arbitrability, scope, and enforceability to the arbitrator. As such, the Court must refer to the arbitrator the question of the agreement's arbitrability and scope.

For these reasons, the Court will grant Defendant's Motion to Compel Arbitration. However, Defendant also asks the Court to dismiss, rather than stay, these proceedings pending the completion of arbitration.   The FAA does not explicitly provide that a case subject to arbitration can be dismissed, however, there is a growing trend among district courts "favoring dismissal of a case when all of the claims contained therein are subject to arbitration." *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1008 (N.D. Ill. 2013), *aff'd*, 556 F. App'x 543 (7th Cir. 2014).   While the Court agrees that judicial efficiency is a compelling reason to consider a request for dismissal here, the Court found that the parties delegated questions of the agreement's arbitrability and scope to the arbitrator.   Accordingly, whether Plaintiff's claims are covered by the arbitration agreement is not a question currently before the Court, and the Court declines to dismiss this case on that basis. Instead, the Court will stay these proceedings pending the completion of arbitration.

13

### Conclusion

For these reasons, Defendant's Motion to Compel Arbitration (Doc. 20) is **GRANTED**. All proceedings in this case are **STAYED**. All pending motions are **DENIED, as moot, and without prejudice**, and all deadlines are **TERMINATED**.

The parties are **DIRECTED** to file a status report advising the Court of the status of the arbitration proceeding on or before December 1, 2023, and every June and December thereafter until the arbitration is complete, and to file a final status report within 30 days of the completion of the arbitration.

**SO ORDERED.**

Dated: June 2, 2023

_____
DAVID W. DUGAN
United States District Judge

14